UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SUSAN SCHULTZ,

                         Plaintiff,

           - against -

ANDREW SAUL, Commissioner of Social Security,[1]

                         Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-5919 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Susan Elizabeth Schultz brings this action under 42 U.S.C. § 405(g), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance Benefits ("DIB"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 14, 16.) For the reasons that follow, the Court grants Plaintiff's motion for judgment on the pleadings, denies the Commissioner's cross-motion, and remands this matter for further administrative proceedings.

---

[1] Andrew Saul became Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25, Andrew Saul is substituted as Defendant in this action. Fed. R. Civ. P. 25(d); *see* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is respectfully directed to update the docket accordingly.

**BACKGROUND**

**I.      Procedural History**

On February 3, 2015, Plaintiff filed an application for DIB, alleging disability beginning on July 7, 2014. (Administrative Transcript ("Tr."),[2] Dkt. 12, at 15.) On June 3, 2015, Plaintiff's application was initially denied. (*Id.* at 15, 92–95.) Plaintiff then filed a request for a hearing before an administrative law judge ("ALJ"). (*Id.* at 96–97.) On August 22, 2017, Plaintiff appeared by video with counsel for a hearing before ALJ John R. Allen. (*Id.* at 34–80.) In a decision dated September 1, 2017, the ALJ determined that Plaintiff was not disabled under the Social Security Act (the "Act") and therefore not eligible for the benefits for which she had applied. (*Id.* at 12–27.) On August 21, 2018, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the decision. (*Id.* at 1–6.) This appeal timely followed.[3]

---

[2] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[3] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing, *inter alia*, 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that because Plaintiff received the Commissioner's final decision on August 26, 2018 and Plaintiff filed the instant action on October 23, 2018—58 days later—this appeal is timely. (*See generally* Complaint, Dkt. 1.)

**II.     The ALJ's Decision**

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a severe impairment. *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff suffers from the following severe impairments: fibromyalgia, cervical degenerative disc disease status post discectomy and fusion, lumbar degenerative disc disease, and migraine headache disorder. (Tr. at 17 (citation omitted).) The ALJ also determined that Plaintiff's diagnoses of asthma, foot and ankle pain, hand and arm pain, postural orthostatic tachycardia syndrome ("POTS"),[4] anxiety disorder, depression, bereavement, and chronic pain were non-severe impairments. (*Id.* at 18–19.) The ALJ then progressed to the third step and determined that Plaintiff's severe impairments did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and

---

[4] POTS is part "of a group of disorders that have orthostatic intolerance (OI) as their primary symptom. OI describes a condition in which an excessively reduced volume of blood returns to the heart after an individual stands up from a lying down position. The primary symptom of OI is lightheadedness or fainting." *Postural Tachycardia Syndrome Information Page*, Nat'l Inst. Neurological Disorders & Stroke, https://www.ninds.nih.gov/Disorders/All-Disorders/Postural-Tachycardia-Syndrome-Information-Page (last visited Sept. 25, 2020).

404.1526)"—the Listings. (*Id.* at 19.) Moving to the fourth step, the ALJ found that Plaintiff maintained the residual functional capacity ("RFC")[5] to perform

> sedentary work [6] as defined in 20 CFR 404.1567(a) except she can only occasionally overhead reach bilaterally. She may not perform tasks involving frequent head turn or prolonged upward or downward gaze. She can occasionally climb stairs or ramps, but never ladders, ropes, or scaffolds. The claimant can occasionally bend or stoop; but she may not crouch, crawl. She must be allowed to change position approximately every 30 minutes, but could stay on task while doing so. Finally, she must not be required to perform fast-paced or strict time-limited tasks, such as assembly line work.

(*Id.* at 19.) Based upon this RFC finding, the ALJ determined that, although Plaintiff was not capable of performing her past relevant work as a medical assistant, "there are jobs that exist in significant numbers in the national economy that the claimant can perform," such as order clerk, inspector, and packager. (*Id.* at 25, 26.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (*Id.* at 27.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to

---

[5] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[6] According to the applicable regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

4

determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation marks omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and alterations omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks omitted). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (noting that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision." (internal quotation marks omitted)). Ultimately, the reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld," *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

## DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ did not accord proper weight to the medical evidence, and thus failed to properly evaluate her RFC. (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mem."), Dkt. 14, at 19–22.) The Court

5

agrees,[7] and finds that the ALJ erred by (1) affording "little to partial weight" to the opinion of Plaintiff's longtime treating physician, Dr. Anthony Foto, D.O. (Tr. at 23, 540–46, 1090–93); (2) failing to consider or accord any weight to the other physicians whose reports constituted medical evidence, including Drs. Adam Schneider, M.D., Dean Mitchell, M.D., and Andrew Porges, M.D. (*compare id.* at 21–23 (outlining the medical evidence submitted by Plaintiff), *with id.* at 23–25 (assigning weight to the medical opinion evidence)); and (3) failing to elicit additional medical testimony and sufficiently developing the record, and substituting his own lay opinion for that of medical professionals (*id.* at 25).

### I.   Failure to Afford Proper Weight to Plaintiff's Treating Physician

The SSA has mandated specific procedures an ALJ must follow when considering the weight to assign a treating physician's opinion.[8]  *See* 20 C.F.R. § 404.1527.  "[T]he opinion of a [plaintiff]'s treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alteration omitted) (quoting 20 C.F.R.

---

[7] Because remand is warranted based on the ALJ's failure to accord proper weight to the medical evidence, the Court need not reach Plaintiff's arguments that the ALJ failed to consider the side effects of her medications and lower extremity impairments, or properly credit Plaintiff's statements regarding the severity of her pain and impairments. (*See* Pl.'s Mem., Dkt. 14, at 23–26.)

[8] Although "[t]he current version of the [Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, as the current regulations apply only "to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018) (citing 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 404.1520(c).  Because Plaintiff's claim was filed on February 3, 2015 (Tr. at 15), the treating physician rule applies.

§ 404.1527(d)(2)).  There are several factors that an ALJ must explicitly consider when weighing medical evidence.  As the Second Circuit has explained:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion.  Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA]'s attention that tend to support or contradict the opinion.  The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives claimant's treating source's opinion.

*Halloran v. Barnhardt*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (internal quotation marks, citations, and alterations omitted); *see also Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019); *Burgess*, 537 F.3d at 129.  "Before the ALJ can disregard a treating physician's medical opinion, the ALJ must first ask the treating physician to clarify the deficiencies the ALJ perceives in that opinion."  *Austin v. Comm'r of Soc. Sec.*, No. 18-CV-331 (PKC), 2019 WL 4751808, at *6 (E.D.N.Y. Sept. 30, 2019) (citation omitted).  Furthermore, while an ALJ is entitled to disregard the opinion of a plaintiff's treating physician after providing the physician the opportunity to correct the deficiencies in his or her medical reports, the ALJ must make clear that this decision is based on conclusions made by other medical professionals.  *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." (citation omitted)); *Brown v. Comm'r of Soc. Sec.*, No. 18-CV-1994 (RRM), 2020 WL 2836758, at *11 (E.D.N.Y. May 28, 2020) ("The opinion of a treating physician is given extra weight because of his unique position resulting from the *continuity* of treatment he provides and the doctor/patient *relationship* he develops." (emphasis in original) (internal quotation marks and alteration omitted) (quoting *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (summary

7

order))); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." (citations omitted)).

Dr. Foto, Plaintiff's primary doctor and a doctor of osteopathy, began treating Plaintiff in 2002. (Tr. at 540; *see also* Pl.'s Mem., Dkt. 14, at 20–21.) In July 2014, Dr. Foto diagnosed Plaintiff with fibromyalgia, chronic headaches, and chronic pain, and noted that she could not return to her prior work as a medical assistant due to these conditions. (Tr. at 365; *id.* at 371 (indicating that Plaintiff was unable to work beginning on July 7, 2014 and through at least 2024).) At the time of her diagnosis, Plaintiff's symptoms included extreme tremors upon too much physical exertion, forgetfulness, difficulty concentrating, stumbling while walking, and dropping things. (*Id.* at 373.) On March 24, 2015, Dr. Foto opined in a disability questionnaire that Plaintiff could lift or carry less than twenty pounds occasionally, stand or walk for less than two hours in an eight-hour workday, and could sit without limitation only if provided lumbar support. (*Id.* at 544–45.) He also opined that Plaintiff had pulling and pushing limitations in her left shoulder and postural limitations due to her disc herniation at L4-L5. (*Id.* at 545.) Dr. Foto relied on range of motion examinations in reaching his conclusion, including specific data indicating that Plaintiff had reduced ranges of motion in her shoulder, elbow, cervical spine, and lumbar spine. (*Id.* at 547–48.) He also referred to a June 12, 2014 MRI showing spondylitic[9] change at C6-7, and a January 24, 2013 MRI showing L4-5 disc herniation. (*Id.* at 542.)

---

[9] "Cervical spondylosis refers to age-related wear and tear affecting the spinal disks in the neck. As the disks dehydrate and shrink, signs of osteoarthritis develop, including bony projects along the edges of bones." *Rivera v. Berryhill*, No. 16-CV-5021 (PKC), 2018 WL 388942, at *3 n.10 (E.D.N.Y. Jan. 12, 2018) (internal quotation marks, citation, and alteration omitted).

8

On December 13, 2016, Dr. Foto completed another medical statement regarding Plaintiff's physical and exertional limitations. (*Id.* at 664–71.) Dr. Foto noted that Plaintiff could stand for fifteen minutes and sit for fifteen minutes at one time, but could not stand or walk at all in the workday context. (*Id.* at 664.) He also concluded that Plaintiff could occasionally lift five pounds, but could not lift any weight on a frequent basis, and that he anticipated Plaintiff being absent from work due to her impairments or treatment more than four days per month. (*Id.*) In addition, Dr. Foto opined that Plaintiff could sit or stand for ten minutes without interruption and walk for fifteen minutes without interruption. (*Id.* at 667.) Dr. Foto concluded that during an eight-hour workday, Plaintiff could stand or walk for only thirty minutes in total, or sit for one hour in total. (*Id.*) In support of these limitations, Dr. Foto relied upon Plaintiff's unpalpable tender points and fibromyalgia,[10] neck pain from a C5-6 fusion in 2008, limited range of motion in her left shoulder, lower back pain at L4-5, calf and lower leg pain with foot extension and adduction, muscle weakness, chronic pain, severe environmental allergies, and asthma. (*Id.* at 666, 668–70.)

Finally, on May 23, 2017, Dr. Foto reaffirmed that Plaintiff was suffering from fibromyalgia, asthma, POTS, cervical spinal stenosis, and L4-5 degenerative disc disease. (*Id.* at 1090.) He identified bilateral pain in Plaintiff's lumbosacral, cervical, and thoracic spine; chest; shoulders; arms; hands/fingers; hips; legs; and knees, ankles, and feet. (*Id.* at 1091.) The pain was

---

[10] "Fibromyalgia is [] often characterized by additional pain when firm pressure is applied to specific areas of [the] body, called tender points." *Fibromyalgia: Understand How It's Diagnosed*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/in-depth/fibromyalgia-symptoms/art-20045401 (last visited July 6, 2020). "Prior to 2010, at least 11 of these 18 [tender] points had to test positive for tenderness for [a] doctor to officially diagnose [someone] with fibromyalgia." *What Are Fibromyalgia Tender Points?*, HEALTHLINE (May 30, 2020), https://www.healthline.com/health/fibromyalgia/fibromyalgia-tender-points (last visited Sept. 25, 2020). Although the diagnostic criteria "has since changed," "tender point examinations are still a common diagnostic tool." *Id.*

"widespread," with "daily throbbing." (*Id.*) The clinical findings he relied on included lab work and observation of Plaintiff's range of motion, multi-joint pain, and tender points. (*Id.* at 1090.) Based on Plaintiff's symptoms, Dr. Foto concluded that Plaintiff had the following limitations: she could sit for fifteen minutes at one time and stand for ten minutes at one time; she could sit, stand, and walk for less than two hours in an eight-hour workday; she could rarely lift or carry up to ten pounds; she could rarely twist, occasionally climb stairs, and never stoop, crouch, or climb ladders; and she could never look down or turn her head right or left, and could only rarely look up. (*Id.* at 1091–92.) Due to these limitations, Dr. Foto opined that, during an eight-hour workday, Plaintiff would require the ability to shift position at will, take four to five unscheduled breaks of twenty to thirty minutes each, and be off-task twenty-five percent or more of the time. (*Id.* at 1091–93.)

The ALJ's decision to assign "little to partial weight" to Dr. Foto's opinion is not substantiated by evidence in the record, especially in light of Plaintiff's fibromyalgia diagnosis. Dr. Foto had a long-term relationship with Plaintiff (*see, e.g.*, Tr. at 365–373, 560–658), and "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of [fibromyalgia]," *Campbell v. Colvin*, No. 13-CV-451 (GLS) (ESH), 2015 WL 73763, at *5 (N.D.N.Y. Jan. 6, 2015) (emphasis and internal citation omitted). Additionally, it was error for the ALJ to allocate "little to partial weight" to Dr. Foto's opinion, especially his December 2016 medical evaluation, on the basis that Plaintiff's identified symptoms waxed and waned and were, at times, inconsistent with Plaintiff's physical examinations. (Tr. at 23.) *See id.* (noting that individuals experiencing symptoms of fibromyalgia "may have bad days and good days" (internal quotation marks and citation omitted)). Moreover, the ALJ's discounting of Dr. Foto's assessment of Plaintiff's limitations and the severity of her fibromyalgia is inconsistent with case law in this

10

Circuit insofar as it was based on Plaintiff's subjective complaints rather than objective medical evidence. *See Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) ("[F]ibromyalgia is a disabling impairment and [] 'there are no objective tests which can conclusively confirm the disease.'" (citation omitted)); *Campbell*, 2015 WL 73763, at *11 ("[R]eliance on subjective complaints in fibromyalgia cases hardly undermines medical opinion as to functional limitations it produces because patients' reports of complaints and histories are essential diagnostic tools."); *cf. Dougherty-Noteboom v. Berryhill*, No. 17-CV-243 (HBS), 2018 WL 3866671, at *7 (W.D.N.Y. Aug. 15. 2018) (finding, in the context of assessing a plaintiff's credibility, that "fibromyalgia frequently presents without objective evidence, and [] it would be erroneous to dismiss [the plaintiff's] subjective complaints purely based on a lack of corroborating objective evidence.") (collecting cases). Remand is warranted with respect to "denials of disability claims based on fibromyalgia where the ALJ's determination turned on the lack of 'objective' evidence in the record to support the claimant's subjective complaints of pain." *Lim v. Colvin*, 243 F. Supp. 3d 307, 316–17 (E.D.N.Y. 2017) (collecting cases).

**II.     Failure to Consider or Accord Any Weight to Other Medical Evidence**

The ALJ's failure to consider and accord any weight to the other physicians whose reports constituted medical evidence also constitutes legal error warranting remand. Notably, in August 2014, Dr. Mitchell also diagnosed Plaintiff with fibromyalgia (*id.* at 838), which was confirmed by Dr. Porges in September 2014 following a physical examination of Plaintiff that revealed bilateral elbow tenderness (*id.* at 385). Yet, the ALJ did not even mention the findings of these other physicians, despite their consistency with the findings of Plaintiff's treating physician, Dr. Foto. This was error and requires remand.

### III. Failing to Develop the Record and Substituting Lay Opinion

Finally, to the extent that the ALJ gave little weight to Dr. Foto's opinion and failed to solicit any additional medical evidence[11] to fill in the gaps in the record, the ALJ both failed to meet his affirmative duty to develop the record and impermissibly substituted his own lay opinion for that of a medical expert. *See Austin*, 2019 WL 4751808, at *6; *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information . . . *sua sponte*."). "[W]hile an ALJ is free . . . to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (internal quotation marks omitted); *see also Hilsdorf*, 724 F. Supp. 2d at 347. While an ALJ's conclusion need "not perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order), there must be some competent medical opinion guiding his RFC determination, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support the ALJ's finding as to [plaintiff]'s ability to perform sedentary work, it is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion.'" (quoting *McBrayer v. Sec'y of Health & Hum. Servs.,* 712 F.2d 795, 799 (2d Cir. 1983))); *see also Perez v. Berryhill*, No. 17-CV-3045 (JMA), 2019 WL 1324949, at *5 (E.D.N.Y.

---

[11] Indeed, to the extent there were opinions from other medical sources in the record, the ALJ gave them little weight, but did not seek out any additional medical evidence. For example, in May 2015, Consultative Examiner Jerome Caiati, M.D., evaluated Plaintiff and found that she had no restrictions for sitting, standing, walking, reaching, pushing, pulling, or climbing. (Tr. at 559.) However, the ALJ assigned "little weight" to Dr. Caiati's opinion because it understated Plaintiff's pain and reduced range of motion. (*Id.* at 25.)

Mar. 25, 2019) (remanding where "the ALJ determined Plaintiff's RFC based on her own interpretation of the medical evidence in the record and Plaintiff's testimony."). In the total absence of any credited medical evidence, "the ALJ's RFC determination that Plaintiff was capable of sedentary work 'constituted an impermissible interpretation of bare medical findings' and is not supported by substantial evidence." *Perez*, 2019 WL 1324949, at *6 (quoting *Guarino v. Colvin*, No. 14-CV-598 (MAP), 2016 WL 690818, at *2 (W.D.N.Y. Feb. 22, 2016)).

For these reasons, the Court finds that the ALJ failed to adequately develop the record, and that his determination was not supported by substantial evidence in the record, and remands for further consideration.

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 25, 2020
      Brooklyn, New York