```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SUSAN SCHULTZ,

                        Plaintiff,                          MEMORANDUM & ORDER
            - against -                                     18-CV-5919 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------------x
```

PAMELA K. CHEN, United States District Judge:

Plaintiff Susan Schultz filed this action pursuant to 28 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which denied Plaintiff benefits. After the parties filed cross-motions for judgment on the pleadings, the Court granted Plaintiff's motion and remanded to the SSA, where Plaintiff was awarded roughly $142,646 in past-due benefits. Plaintiff's counsel, Daniel Adam Osborn of Osborn Law, now moves for $35,656.50 in attorney's fees pursuant to 42 U.S.C. § 406(b). For the reasons explained below, Osborn Law's motion is granted in part and denied in part and Osborn Law is awarded $26,065.

## BACKGROUND

After being denied benefits at the agency level, Plaintiff retained Osborne Law and filed this action on October 23, 2018. (Dkt. 1.) After the parties filed cross-motions for judgment on the pleadings, and Plaintiff filed a reply, the Court granted Plaintiff's motion and remanded to the SSA. (*See* Dkt. 21.) This Court then awarded Plaintiff $8,000 in attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Dkt. 23; 12/14/2020 Docket Order.) On March 4, 2022, the SSA mailed Plaintiff a Notice of Award letter informing her that she would receive approximately $142,646 in past-due benefits, with 25% ($35,656.50) withheld as possible

1

fees for her attorney. (Dkt. 24-6.[1]) By motion filed on March 15, 2022, Osborne Law now seeks $35,656.50 for work performed before this Court. (Dkt. 24-1.)

Along with Osborn Law's motion, counsel submitted a fee agreement, demonstrating that Schultz retained Osborn Law on a 25% contingency-fee basis, and itemized time records, indicating that it spent a total of 40.1 hours litigating this matter before this Court. (Dkt. 24-3.) $35,656.50 for 40.1 hours of work would be an effective hourly rate of $889.19 per hour.

## DISCUSSION

### I.     Timeliness

Motions for attorney's fees under 42 U.S.C. § 406(b) must be filed within the 14-day filing period proscribed by Rule 54(d) of the Federal Rules of Civil Procedure. *Sinkler v. Berryhill*, 932 F.3d 83, 91 (2d Cir. 2019). The 14-day period begins to run from when "counsel receives notice of the benefits award," and the law presumes that "a party receives communications three days after mailing." *Id.* at 87–89 & n.5. Furthermore, because Rule 54(d) allows judges to extend the 14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89.

The notice of award letter was mailed on March 4, 2022. (Dkt. 24-6.) This motion was filed on March 15, 2022. (Dkt. 24.) The motion is thus timely filed.

### II.    Reasonableness of the Requested Fee

####    A.     Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25% of the total of the past-due benefits to which the claimant is entitled."

---

[1] The letter does not state the exact amount of past-due benefits awarded, but notes that the SSA "usually" withholds 25% for potential attorney's fees and, in this case, was withholding $35,656.50. (Dkt. 24-6.)

42 U.S.C. § 406(b). If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness. *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) the character of the representation and the results the representative achieved; (2) whether counsel was responsible for a delay, unjustly allowing counsel to obtain a percentage of additional past-due benefits[2]; and (3) whether the requested amount is so large in comparison to the time that counsel spent on the case as to be a windfall to the attorney." *Id.* at 849 & n.2, 853.

With respect to whether a fee would be a "windfall," in *Fields* the Second Circuit emphasized that "the windfall factor does *not* constitute a way of reintroducing the lodestar method and, in doing so, . . . indicate[d] the limits of the windfall factor." *Id.* at 854. Rather, "courts must consider more than the de facto hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do," (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level," (3) "the satisfaction of the disabled claimant," and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 854–56. Ultimately, a

---

[2] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.4 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake. Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery. [W]here the attorney is responsible for delay, the attorney should not be allowed to profit from the accumulation of benefits during the pendency of the case in court." (internal quotation marks and citation omitted)).

district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53.

In addition, if fee awards are made to a claimant's attorney under both the EAJA and § 406(b), the attorney must refund the claimant the amount of the smaller fee. *Gisbrecht v. Barnhart*, 535 U.S. 789, 789 (2002); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients."); *Barbour v. Colvin*, No. 12-CV-548 (ADS), 2014 WL 7180445, at *2 (citing *Porter v. Comm'r of Soc. Sec.*, No. 06-CV-1150 (GHL), 2009 WL 2045688, at *3 (N.D.N.Y. July 10, 2009)).

**B.     Application**

Here, Plaintiff retained Osborn Law pursuant to a 25% contingency-fee agreement. (Dkt. 24-2.) There are no allegations of fraud or overreaching with respect to the retainer agreement. Osborn Law seeks the full 25% of Plaintiff's past-due benefits. At 40.1 hours of work, that would be an effective hourly rate of $889.19 per hour. For the reasons explained below, the court finds that amount to be unreasonable in the context of this case.

With respect to "the character of the representation and the results the representative achieved," the Court notes that Osborn Law's briefing was generally professional and identified relevant infirmities in the SSA's decision. The briefing did overlook, however, the fundamental flaw in the agency's proceedings of failing to develop the record. Additionally, Osborn Law simply failed to file its moving brief by the (extended) deadline to do so. (*See* 11/27/2022 Docket Order.) And while Plaintiff ultimately obtained the benefits she sought, this and other delays caused by Osborn Law required Plaintiff to be without the much needed benefits for several

4

months. For those reasons, the Court finds that this consideration warrants a downward adjustment.

With respect to whether counsel was responsible for a delay, the Court notes more specifically that Plaintiff was responsible for three delays. In September 2019 (before the COVID-19 pandemic), counsel first requested a two-month extension to file the opening brief. (Dkt. 13.) The Court granted that extension, allowing Osborn Law to file the opening brief on November 26, 2019 (again, before the COVID-19 pandemic). (11/27/2019 Docket Order.) Without explanation, however, Osborn Law missed that deadline. The Court granted a *sua sponte* extension, warning Osborn Law that failure to comply with the extended deadline could result in dismissal for failure to prosecute, and informing the parties that no further extensions would be granted. (11/27/2019 Docket Order.)[3] There was no excuse for missing the extended deadline in November 2019, and the cumulative effect of the extension was exactly what the Second Circuit warned about in *Fields*: Plaintiff's counsel being eligible for an additional proportion of past-due benefits because of their own delay. *Fields*, 24 F.4th at 849 ("Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery."). For those reasons, the Court finds that this consideration also justifies a downward adjustment.

With respect to "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do," the Court notes that 40.1 hours is on the higher end of what is typically required for these straightforward cases. However, under *Fields*, the Court does not find that this factor, standing alone, warrants a further downward adjustment. In *Fields*,

---

[3] Before the deadline to file a reply, however, the COVID-19 pandemic struck, and Osborn Law requested another two-week extension, which was not unusual under the circumstances. (Dkt. 19.)

5

the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work, justifying a *de facto* hourly rate of $1,556.98. 24 F.4th at 854. Here, the transcript was 1098 pages (Dkt. 12), the opening brief was 27 pages (Dkt. 14), and Plaintiff's counsel was also required to draft a reply brief (Dkt. 20). While Osborn Law spent significantly more time on the case than counsel in *Fields*, Osborn Law was required to do more work than counsel in *Fields* (given the length of the record), and did not spend more than double the time as counsel in *Fields*. This factor, standing alone, thus does not justify a downward adjustment, but the reason for the additional time likely justifies a downward adjustment, as discussed under the next consideration.

With respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," the Court notes that none of Osborn Law's filings suggest that Osborn Law represented Schultz in front of the SSA before filing suit in this court.[4] In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before Administrative Law Judges and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall. *See* 24 F.4th at 855. Here, Osborn was necessarily less efficient in its briefing before this Court by not

---

[4] If Osborne Law did, in fact, represent Schultz in front of the SSA before filing suit in this court, the 40.1 hours spent by the law firm before this Court would be unreasonable and a downward adjustment would be warranted based on that consideration. By way of comparison, the Court notes that in *Daniels v. Comm'r of Social Security*, 20-CV-430 (PKC), an SSA matter where Osborne Law represented Plaintiff only after the initial SSA proceedings and thus had to familiarize themselves with the administrative record before filing suit here, Osborne Law spent only slightly more time—42.3 hours—than they are claiming in this case, where they seem to already have been familiar with the record.

6

having previously briefed the issues before the SSA. This factor thus justifies a downward adjustment.

With respect to "the satisfaction of the disabled claimant," the Court notes again that, while Schultz received what she wanted—benefits from the SSA—that favorable outcome was delayed by Osborn Law, causing Schultz to go additional months without those benefits, which likely caused further hardship. This consideration thus justifies a downward adjustment.

With respect to "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," the Court notes that this case was not as uncertain as the underlying case in *Fields*, where the SSA denied benefits even after one remand from the district court. *Fields*, 24 F.4th at 850. However, given that Osborn Law seeks a 30% lower *de facto* hourly rate than counsel in *Fields*, the Court does not find that this factor alone justifies a downward adjustment.

For the reasons explained above, the Court finds the requested amount to be unreasonable, and reduces the amount to $26,065, which is a *de facto* hourly rate of $650. Additionally, upon receiving the § 406(b) award, Osborn Law must remit the $8,000 received pursuant to the EAJA to Plaintiff.

## CONCLUSION

For the foregoing reasons, it is hereby ordered that the motion for attorney's fees under 42 U.S.C. § 406(b) is granted in part and denied in part, and Osborn Law is awarded $26,065. Upon receipt of this award from the government, Osborn Law shall promptly refund Plaintiff $8,000, which represents the EAJA fees already received by counsel. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 25, 2022
        Brooklyn, New York

8